Jay A. Zweig (011153)
Melissa R. Costello (020379)
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone: 602.798.5400
Facsimile: 602.798.5595
Email: zweigj@ballardspahr.com
Email: costellomr@ballardspahr.com

*Attorneys for Defendant JDM Golf, LLC*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alyssa E. Nessel, a single woman,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>JDM Golf, LLC, an Arizona limited liability company; John and Jane Doe, husband and wife,<br><br>　　　　Defendants. | Case No. 2:23-cv-00095-DMF<br><br>**DEFENDANT JDM GOLF, LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Oral Argument Requested)** |

This is a case involving a short-term, part-time, beverage service employee who was fired after multiple warnings about her tardiness and attendance. She alleges that she was sexually harassed by a patron and a co-worker, and fired because she complained. The undisputed material facts are that her attendance problems predated her complaints, and that her employer took immediate and reasonable corrective actions in response to her complaints. She was properly fired for legitimate business reasons.

Because there is no genuine material fact dispute and Plaintiff's claims lack legal merit, Defendant JDM Golf, LLC ("JDM Golf") is entitled to summary judgment. The following Memorandum of Points and Authorities, the accompanying Separate Statement of Facts ("SOF"), and this Court's record support this Motion under Fed. R. Civ. P. Rule 56 and LRCiv Rule 56.1(a).

/ / /

/ / /

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  UNDISPUTED MATERIAL FACTS

Plaintiff was an at-will employee for JDM Golf as a part-time beverage server for fewer than five months. [SOF ¶¶ 1, 5, 29] Her first day was May 23, 2019. [SOF ¶ 1] She was an hour and a half late that day, and knew that her late arrival violated JDM Golf policy and her job requirements. [SOF ¶¶ 2, 7, 9-12]. In her brief employment at JDM Golf working two to four shifts per week, Plaintiff was 15 to 90 minutes late to work nearly ten times, and she no-call/no-showed for work twice. [SOF ¶¶ 1, 2, 5, 6, 17, 20, 23, 25, 29, 31] Her failure to show up for work when scheduled was problematic because it impacted customer service, which is one of JDM Golf's express priorities. [SOF ¶ 8]

JDM Golf addressed Plaintiff's tardiness with her on her first day in May 2019, followed up about her attendance and tardiness issues in June 2019, and provided her verbal and written warnings for her tardiness and attendance throughout her employment. [SOF ¶¶ 4, 6, 15-18, 21-25] Plaintiff, who had been fired from her previous job at Trader Joe's for tardiness, had no excuses and admits that her tardiness and attendance at JDM Golf were unacceptable and that JDM Golf appropriately held her accountable to come to work on time. [SOF ¶¶ 25-27, 32, 33, 36].

On September 13, 2019, Plaintiff told her supervisor, Leo Simonetta, JDM Golf's Director of Golf Operations, that a golfer tried to pull down her skort on the golf course. [SOF ¶¶ 3, 43-44, 48] Leo Simonetta immediately reported the incident to JDM Golf Security, and Security called local law enforcement after telling Plaintiff that the offender's alleged conduct was unacceptable to JDM Golf. [SOF ¶¶ 49-52] Although Plaintiff was not fully cooperative in the investigation, JDM Golf promptly and thoroughly investigated Plaintiff's complaint. [SOF ¶¶ 49-60] JDM Golf excused her from completing her closing paperwork and gave her the rest of the day off. [SOF ¶ 61]

On September 17, 2019, a few days after the incident with the golfer, Leo Simonetta and Plaintiff's other supervisor, JDM Golf's Head Golf Professional, Rick Cicci, met with Plaintiff to check on Plaintiff. [SOF ¶¶ 3, 13, 62] Plaintiff told her supervisors that she

appreciated JDM Golf's response to her complaint, that she felt safe and comfortable at work, and that she wanted to continue doing her job. [SOF ¶¶ 62, 63] Plaintiff admits that JDM Golf's actions before and after the alleged incident demonstrate that JDM Golf did not tolerate sexual harassment, took her complaint seriously, and cared about her safety. [SOF ¶¶ 38-42, 49-59, 62-64]

Because they were meeting to discuss Plaintiff's work going forward, Leo Simonetta and Rick Cicci also reminded Plaintiff that she needed to improve her attendance and timelines and other performance issues, including untimely completion of her paperwork duties. [SOF ¶¶ 18, 37, 62-63] Plaintiff promised she would improve. [SOF ¶ 19] But she did not improve. [SOF ¶¶ 20, 23] On September 28, 2019, she no-call/no-showed for a work shift. [SOF ¶ 20] JDM Golf gave her a Written Warning form for her attendance violation, cautioning her that further tardiness or attendance violations could result in termination. [SOF ¶ 21] Plaintiff did not contest that she deserved this warning, and signed the Written Warning form. [SOF ¶ 22]

On October 12, 2019, Rick Cicci met with Plaintiff to address an excessive $450 tip that Plaintiff had improperly charged for herself the day prior on a $15.50 beverage sale. [SOF ¶¶ 37, 73] During the meeting, Plaintiff told Rick Cicci that, three weeks earlier, she had an uncomfortable text conversation with a coworker friend outside of work hours. [SOF ¶¶ 66-74] Plaintiff told Rick Cicci that she was not worried about the text messages. [SOF ¶ 74]

Despite Plaintiff telling Rick Cicci that the text messages did not interrupt her work and that she was not worried about her coworker bothering her, JDM Golf once again took immediate corrective action to address a concern that Plaintiff raised. [SOF ¶¶ 74-84] Rick Cicci reported Plaintiff's concern to Leo Simonetta, and Leo Simonetta reported it to JDM Golf Human Resources ("HR"). [SOF ¶¶ 75-77] HR began an immediate investigation, including seeking details from Plaintiff, reviewing the text messages, and interviewing Plaintiff's coworker who texted with Plaintiff. [SOF ¶¶ 77-82] Plaintiff did not cooperate in the investigation. [SOF ¶¶ 77-81] Based on its investigation, JDM Golf concluded that

3

the text messages from the coworker were off-duty but unprofessional, and JDM Golf suspended the coworker without pay for a week. [SOF ¶ 83] The coworker never contacted or bothered Plaintiff again. [SOF ¶ 84]

Plaintiff's tardiness issues continued. [SOF ¶ 23, 24] She was 50 minutes late to work on October 15, 2019. [SOF ¶ 23-25] Plaintiff did not contest that she deserved another warning for her tardiness, and signed another Written Warning form. [SOF ¶ 24, 25] JDM Golf HR recalls that JDM Golf has terminated other employees for attendance issues. [SOF ¶ 35] Recognizing that all of the counseling and warnings had not changed Plaintiff's behavior, and given the issues caused by Plaintiff's five months of inconsistent attendance, Leo Simonetta and HR determined that Plaintiff was unreliable, and JDM Golf terminated Plaintiff's employment for her ongoing tardiness and attendance violations on October 17, 2019. [SOF ¶¶ 28, 29, 34]

## II. LEGAL STANDARD

Summary judgment should be granted where there is "no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the case…." *Saliego v. SRP*, 2023 U.S. Dist. LEXIS 199556, *10 (D. Ariz. Nov. 27, 2023) (granting employer's motion for summary judgment) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (affirming summary judgment). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23.

Once JDM Golf submits its legal and factual basis for the motion, "[t]he burden then shifts to the non-movant to establish the existence of a material fact….The non-movant must do more than simply show that there is some metaphysical doubt as to the material facts by coming forward with specific facts showing that there is a *genuine* issue for trial."

4

*Drottz v. Park Electrochemical Corp.*, CV-11-1596-PHX-JAT, 2013 WL 6157858, *12-13 (D. Ariz. Nov. 25, 2013) (emphasis in original; citations and internal quotations omitted). "[T]he party opposing summary judgment 'may not rest upon the mere allegations or denials of [the party's] pleading, but…must set forth specific facts showing that there is a genuine issue for trial.'" *Juarez v. CC Servs., Inc.*, 434 F.Supp.2d 755, 758 (D. Ariz. 2006) (citing Fed. R. Civ. P. 56(e)). The record here is that JDM Golf has met the standards for summary judgment.

**III.   JDM GOLF IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF WAS NOT SUBJECTED TO A HOSTILE WORK ENVIRONMENT AND JDM GOLF DID NOT RETALIATE AGAINST HER.**

In Count I of the Amended Complaint, Plaintiff alleges discrimination and retaliation under Title VII of the Civil Rights Act of 1964. In Count II, she alleges discrimination and retaliation under the Arizona Civil Rights Act ("ACRA"), A.R.S. § 41-1461 *et seq*. These claims are subject to the same analysis. *See Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004) (quoting *Higdon v. Evergreen Int'l Airlines, Inc.*, 138 Ariz. 163, 673 (1983) ("[T]he Arizona Civil Rights Act is generally identical to Title VII, and therefore federal Title VII case law is persuasive in the interpretation of the Arizona Civil Rights Act") (internal quotations and punctuation omitted)); *see also Higby v. Newby*, No. CV-03-0899PHX-SMM, 2006 WL 359862, *6-7, 11-12 (D. Ariz. Feb. 8, 2006) (applying the same analyses to Title VII and ACRA claims of hostile work environment and retaliation); *Sorensen v. Southwest Behavioral Health Servs.,* No. CV-05-4151-PHX-DGC, 2007 U.S. Dist. LEXIS 44444, *4 (D. Ariz. June 18, 2007) (reasoning that ACRA was modeled after Title VII and addressing Plaintiff's ACRA and Title VII discrimination and retaliation claims only in terms of Title VII).

JDM Golf is entitled to summary judgment on Plaintiff's discrimination and retaliation claims under Title VII (Count I) and the ACRA (Count II) because she has failed to establish that JDM Golf is liable for discrimination based on sexual harassment, and

because JDM Golf terminated her for chronic tardiness and absences and not in retaliation for her reporting two stray incidents.

### A.      Plaintiff Cannot Establish Discrimination.

Plaintiff received JDM Golf's anti-harassment and discrimination policy as well as JDM Golf's mandatory sexual harassment training when she was hired. [SOF ¶¶ 38-42] Plaintiff's causes of action for discrimination are premised on her allegations that she was subjected to sexual harassment creating a hostile work environment. She alleges two incidents: (1) a tug on her skort and touch on her clothed bottom by a guest golfer; and (2) an off-color, mutual text message exchange with a coworker outside of work. Neither of these stray incidents constitute unlawful sexual harassment, and this Court should dismiss Plaintiff's claims for discrimination under Title VII (Count I) and the ACRA (Count II).

"To evaluate a claim of hostile work environment caused by sexual harassment, a court must make two basic determinations: first, whether the plaintiff was subjected to a hostile work environment caused by sexual harassment, and second, whether the employer is liable for the harassment that caused that environment." *EEOC v. Love's Travel Stops Country Stores, Inc.*, 677 F.Supp.2d 1176, 1179 (9th Cir. 2009) (citation omitted). Plaintiff's claims fail on both of these elements.

#### 1.      Plaintiff Was Not Subjected to a Hostile Work Environment.

To establish a hostile work environment, Plaintiff needs to prove that she: "1) was subjected to verbal or physical conduct of a sexual nature, 2) this conduct was unwelcome, and 3) this conduct was sufficiently severe or pervasive to alter the conditions of the [Plaintiff's] employment and create an abusive working environment." *Steinaker v. Southwest Airlines Co.*, No. CV-19-05022-PHX-SPL, 2022 U.S. Dist. LEXIS 135259, *5 (D. Ariz. Jul. 29, 2022) (granting employer's motion for summary judgment) (quoting *Freitag v. Aters*, 468 F.3d 528, 539 (9th Cie. 2006)). "The working environment must both subjectively and objectively be perceived as abusive, and the objective analysis is done from the perspective of a reasonable woman." *Id.* (quoting *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir. 2017)).

Here, neither of the two stray incidents alleged in Plaintiff's lawsuit can be "objectively or subjectively perceived as so highly questionable, pervasive or severe as to significantly alter the terms and conditions" of her employment. *See id.* Plaintiff never complained that she could not do her job or come to work on time and, rather, admitted that she felt safe and supported by JDM Golf at work. [SOF ¶¶ 63, 74] Plaintiff's discrimination claims fail because neither of the alleged stray incidents of sexual harassment created a hostile work environment.

      **a.    The Isolated Incident with a Golfer Did Not Create a Hostile Work Environment.**

Plaintiff alleges that an unidentified guest golfer (not a JDM Golf employee) pulled on her skort and touched her bottom over her clothing one time while she was serving beverages during a golf tournament. [SOF ¶¶ 43-45] Plaintiff's claim is insufficient to create a hostile work environment because, as a matter of law, the single incident was not severe or pervasive enough to alter the conditions of Plaintiff's employment. *See, e.g., id.* at *7 (recognizing that "[t]he Ninth Circuit has repeatedly held that a single instance of sexual assault in the form of groping is not sufficiently severe") (*citing Brooks v. City of San Mateo,* 229 F.3d 917, 922 (9th Cir. 2000) (coworker touching plaintiff's stomach, forcing his hand under her sweater, and fondling her bare breast not sufficiently severe); *Robello v. Mandalay Corp.*, 740 F. App'x 607, 608 (9th Cir. 2018) (coworker grabbing plaintiff's breasts not sufficiently severe); *Milano v. Carter*, 599 F. App'x 767, 767 (9th Cir. 2015) (coworker looking down plaintiff's shirt, touching near her breast, and pulling up her shirt to take an unwanted picture of her pregnant stomach not sufficiently severe)).

"[T]he Ninth Circuit has identified only even more egregious forms of hands-on sexual abuse, such as rape, as examples of one-time conduct that could be sufficiently severe to create a hostile work environment." *Id.* at *7-8. The single incident that Plaintiff reported about a golfer pulling on her clothing is insufficient to create a hostile work environment. *See id.* at *9 (as a matter of law, conduct less extreme than rape and violent

sexual abuse was not so severe or pervasive as to alter the conditions of plaintiff's employment). JDM is entitled to summary judgment.

### b. Plaintiff's Text Messaging With Her Coworker Did Not Create a Hostile Working Environment.

Plaintiff also cannot maintain a sexual harassment claim based on her voluntary, non-work-related text conversation with her coworker. The texting consisted of mutual teasing and innuendo over less than a day. [SOF ¶¶ 66-72] This banter is not what courts consider severe or pervasive. *See, e.g., Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008) (internal quotations omitted) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not constitute a hostile work environment"); *see also, e.g., Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1020 (9th Cir. 2018) (finding that isolated and potentially offensive remarks made in reference to the plaintiff or other females were not sufficient to show a severe and pervasive environment that altered the terms or conditions of plaintiff's employment).

Here, Plaintiff's coworker's racy messages outside of working hours were sophomoric, but they were off duty, between friends, and not sufficient to show a severe and pervasive environment that altered the conditions of Plaintiff's employment. *See, e.g., Chesier v. On Q Fin. Inc.*, 382 F. Supp. 3d 918, 925-26 (D. Ariz. 2019) (finding eleven sexual and sexually explicit statements texted by plaintiff's supervisor in one day constituted a single incident and could not establish pervasive harassment for purposes of Title VII). Also demonstrating that Plaintiff's work environment was not impacted by the texting is the fact that she did not tell JDM Golf about the texts until three weeks later, when questioned by Rick Cicci about a $450 tip she deceitfully rang up to charge a customer one hundred times the tip they intended to leave on a $15.50 bill. [SOF ¶¶ 37, 73] Plaintiff deflected from her tip charge misconduct with her complaint about texts between herself and her non-supervisory coworker; but she assured Rick Cicci and HR that she was not concerned about the text messages. [SOF ¶¶ 73-74]

The undisputed material facts are that Plaintiff willingly participated in text messaging with her coworker. [SOF ¶¶ 66-72] As a matter of law, the texts neither objectively nor subjectively altered the conditions of Plaintiff's employment. *See Davis*, 520 F.3d at 1095; *Steinaker*, 2022 U.S. Dist. LEXIS 135259, at *5. JDM Golf is entitled to summary judgment.

### 2. JDM Golf is Not Liable for Either Incident of Alleged Harassment.

JDM Golf is entitled to summary judgment on Plaintiff's discrimination claims because the golfer's alleged conduct and Plaintiff's texting with her coworker were not so severe or pervasive as to alter the conditions of Plaintiff's employment. But even assuming *arguendo* that either stray incident raised a fact question about hostile work environment, JDM Golf is still entitled to summary judgment because JDM Golf is not liable for either incident.

#### a. JDM Golf Is Not Liable for the Golfer's Conduct.

Even if Plaintiff could establish that the golfer subjected her to a hostile work environment – which she cannot – her claim still fails because JDM Golf did not ratify or acquiesce in the harassment and, rather, took immediate and corrective action when Plaintiff reported the conduct. Where a sexually hostile work environment claim is based on harassment by a third-party, such as a business patron like the golfer, a complainant must prove that "the employer either ratifie[d] or acquiesce[d] in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct." *Folkerson v. Circus Circus Enterprises, Inc.*, 107 F.3d 754, 756 (9th Cir. 1997) (affirming summary judgment for employer, finding employee failed to show facts indicating that employer ratified or acquiesced in patron's alleged sexual harassment). "[T]he employer's corrective measures must be reasonably calculated to end the harassment; the reasonableness of the corrective action will depend on, *inter alia*, the employer's ability to stop the harassment and the promptness of the response." *Christian v. Umpqua Bank*, 984 F.3d 801, 811–12 (9th Cir. 2020).

9

"[T]he most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified." *Campbell*, 892 F.3d at 1018 (quoting *Swenson v. Potter*, 271 F.3d 1184, 1196-97 (9th Cir. 2001)). That is exactly what JDM Golf did. The moment Plaintiff reported an incident with a golfer, JDM Golf excused Plaintiff from working, had its head of Security expeditiously investigate, and called law enforcement to the scene to do their own investigation. [SOF ¶¶ 48-60] "Such an investigation, itself, is a warning, not by words but by action that puts all parties on notice that the employer takes such allegations seriously and will not tolerate harassment in the workplace." *Id*. (internal quotations and punctuation omitted). JDM properly investigated the incident. [SOF ¶¶ 48-59, 62-64]

Further, JDM Golf's anti-harassment and discrimination policy and its mandatory sexual harassment training, all of which Plaintiff received, further demonstrates that JDM Golf took reasonable measures to prevent and correct harassment. [SOF ¶¶ 38-42, 64] *See, e.g. Sorensen,* 2007 U.S. Dist. LEXIS 44444, at *11 (recognizing that the Ninth Circuit has made it clear that employers can show that they exercised reasonable care to prevent harassment by adopting and promoting awareness of an anti-harassment policy) *(*citing, *e.g., Hardage v. CBS Broad., Inc.*, 427 F.3d 1177, 1186 (9th Cir. 2005)).

JDM Golf's immediate and thorough action in response to Plaintiff's complaint about a third-party golfer, and its subsequent follow-up with Plaintiff, constituted proper and sufficient remedial action to absolve JDM Golf of liability. *See Campbell*, 892 F.3d at 1018. Plaintiff acknowledged that she felt safe at work and wanted to work after JDM Golf completed its investigation, and admits that JDM Golf's actions before and after she reported the incident demonstrated JDM Golf's commitment to oppose workplace harassment. [SOF ¶¶ 42, 64] JDM Golf is not liable for this alleged incident. *See id.*

  b.  **JDM Golf is Not Liable for the Text Message Exchange.**

Likewise, even if the outside-of-work text conversation that Plaintiff encouraged and participated in with her coworker was sufficient to create a hostile work environment – which it was not – JDM Golf promptly responded and took effective steps to address it

10

immediately after Plaintiff belatedly reported it. *See, e.g., id.; see also Brooks*, 229 F.3d at 924 (holding no hostile work environment existed where employer took immediate corrective action by putting employee on leave and beginning investigation the day after report of harassment).

When the harasser is merely a coworker, as is the case here, "an employer is liable only if the employer knew, or should have known, about the harassment and failed to take prompt and effective remedial action." *Steinaker*, 2022 U.S. Dist. LEXIS 135259, at *5-6 (internal quotations and citation omitted). "[T]he reasonableness of an employer's remedy will depend on its ability to stop harassment by the person who engaged in harassment." *See, e.g., Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991).

JDM Golf first learned about Plaintiff's after-hours text conversation with her coworker when Plaintiff told Rick Cicci about it three weeks later. [SOF ¶ 73] Although Plaintiff told Rick Cicci she was not worried about the text messages, JDM Golf nonetheless took prompt remedial action. [SOF ¶¶ 74-84] Rick Cicci immediately reported the texts to Leo Simonetta, and Leo Simonetta had HR investigate. [SOF ¶¶ 75, 76] Despite Plaintiff refusing to participate further in the investigation and stating that she felt better about the incident after discussing it with Leo Simonetta and Rick Cicci, JDM Golf still investigated. [SOF ¶¶ 77-82]

JDM Golf went further by taking remedial action. [SOF ¶ 83] Because it considered the coworker to have used poor judgment in his off-duty texts with Plaintiff, JDM Golf suspended him for one week without pay and warned him that he could be terminated if it happened again. [SOF ¶ 83] JDM did not discipline Plaintiff, even though she participated in the banter. Demonstrating the effectiveness of JDM Golf's action is Plaintiff's admission that her coworker never contacted or bothered her again. [SOF ¶ 84] *See Ellison*, 924 F.2d at 882.

### 3. Plaintiff's Discrimination Claims Fail as a Matter of Law.

This Court should grant JDM Golf summary judgment on Plaintiff's discrimination claims under Title VII (Count I) and the ACRA (Count II) because neither of the stray

instances of sexual harassment alleged by Plaintiff are legally sufficient to have created a hostile work environment, and even if they were, JDM Golf would not be liable for them as a matter of law because JDM Golf responded to both incidents appropriately. *See Steinaker*, 2022 U.S. Dist. LEXIS 135259, at *5-7.

**B.     Plaintiff Also Cannot Establish A Claim of Retaliation.**

Plaintiff argues that she was terminated because she complained about a guest golfer and her coworker's texts. But the undisputed materials facts are that Plaintiff was terminated because, in less than five months of part-time employment working two to four shifts a week, she was 15 to 90 minutes tardy at least nine times, and twice no-call/no-showed for work. [SOF ¶¶ 1, 2, 5, 6, 17, 20, 23, 25, 29, 31] This Court should enter summary judgment for JDM Golf on Plaintiff's retaliation claims because there are no material facts to support it.

To claim retaliation**,** Plaintiff must establish a *prima facie* case by showing that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the adverse employment action and the protected activity. *See Folkerson*, 107 F.3d at 755; *Kelly v. Boeing Co.*, 848 Fed. Appx. 692, 694 (9th Cir. 2021) (affirming summary judgment for employer). Only after an employee makes a *prima facie* case does the burden shift to the employer "to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive that is discriminatory." *Llamas v. Butte Community College Dist.*, 238 F.3d 1123, 1126 (9th Cir. 2001) (internal citation omitted); *see also Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255-56 (1981) (plaintiff has the burden to prove by a preponderance of the evidence that the legitimate reasons offered by her employer are a pretext for discrimination).

"To withstand summary judgment, [Plaintiff] must make a prima facie case that she would not have been disciplined or fired 'but for' her protected activity." *Watson v. Yavapai Cnty.*, No. CV-14-08228-PCT-NVW, 2016 U.S. Dist. LEXIS 85283, *27 (D.

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004

Ariz. Jun. 30, 2016) (granting summary judgment for employer); *see also Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338 (2013); *Green v. City of Phoenix*, 823 F. App'x 549, 550 (9th Cir. 2020). "[I]t takes more than allegations of knowledge and temporal proximity to demonstrate but-for causation in a Title VII retaliation claim." *Shaninga v. St. Luke's Med. Ctr. LP*, No. CV-14-02475-PHX-GMS, 2016 U.S. Dist. LEXIS 49131, *36 (D. Ariz. Apr. 11, 2016) (citing *Nassar*, 570 U.S. at 360) (finding that despite a close temporal proximity of "a few days to a few months" between protected activity and adverse action, plaintiff had no evidence that the adverse action would not have occurred but-for the protected activity).

Plaintiff's retaliation claim fails because she cannot show that she would not have been terminated for her attendance and tardiness had she not complained about two stray incidents. *Kelly*, 848 Fed. Appx. at 694; *Watson*, 2016 U.S. Dist. LEXIS 85283, at *27. JDM Golf started coaching Plaintiff for her ongoing and objectively provable tardiness and attendance issues her first day on the job, and continued repeatedly coaching and disciplining her for these issues before she ever engaged in a protected activity. [SOF ¶¶ 2, 6, 16, 17, 65, 85] The fact that Plaintiff "was disciplined for good reason before her protests indicates that her subsequent discipline was also for good reason." *Watson*, 2016 U.S. Dist. LEXIS 85253, at *27-28 (citation omitted). It was legitimate for JDM Golf to hold Plaintiff accountable for reporting on time for her part-time beverage server job. JDM Golf fired Plaintiff because was excessively late and no-call/no-showed. [SOF ¶¶ 2, 6, 17, 19-34]

Because JDM Golf has offered legitimate reasons for disciplining and firing her, Plaintiff "must also demonstrate a triable issue of fact as to whether these reasons are pretextual." *Id.* at *27. To show pretext, Plaintiff must prove: (1) the stated reasons were not the real reasons for her termination; and (2) discrimination or retaliation are the real reason. *See Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 130, 153 (2000). Plaintiff's retaliation claim further fails because the record is devoid of any evidence of pretext.

Plaintiff's only allegation to support pretext is that she was terminated after complaining. But mere temporal proximity is generally insufficient to establish pretext. *See Kelly*, 848 Fed. Appx. 692, 694 (temporal proximity alone was insufficient evidence of pretext in light of substantial evidence supporting employer's reason for termination); *Hooker v. Parker Hannifin Corp.*, 548 F. App'x 368, 370 (9th Cir. 2013) (granting summary judgment for employer, holding temporal proximity of one week between plaintiff's protected activity and termination for attendance issues was insufficient to establish proffered reason was pretext); *Klamrzynski v. Maricopa Cnty. Cmty. Coll. Dist.*, No. CV-21-1327-PHX-MHB, 2022 U.S. Dist. LEXIS 205660, *16 (D. Ariz. Oct. 14, 2022), aff'd, 2023 U.S. App. LEXIS 24885 (9th Cir. Sept. 20, 2023) ("[T]he employee must offer evidence beyond temporal proximity that refutes the employer's proffered legitimate reasons for termination").

Plaintiff has no evidence that JDM Golf would have continued her employment but-for her complaints. [SOF ¶ 34] JDM Golf has a strict written policy and practice of prohibiting unlawful retaliation. [SOF ¶ 40] If an employee engages in a protected activity, such as voicing concerns about harassment, JDM Golf's policy and practice is that the employee is protected for reporting such conduct. [SOF ¶ 40] JDM Golf coached and disciplined Plaintiff for her tardiness and attendance before and after her complaints, and terminated Plaintiff due to her longstanding attendance issues. [SOF ¶ 2, 4, 6, 15-25, 29, 30, 32-34, 65, 85] JDM Golf took Plaintiff's complaints about the stray incidents seriously by investigating them. [SOF ¶ 48-59, 62-64, 73-84] JDM Golf never objected to Plaintiff complaining – in fact, she was thanked for following JDM Golf's policy to report incidents and reminded that JDM Golf takes complaints seriously. [SOF ¶ 62] Plaintiff admits that she was late to work multiple times and that her attendance was unacceptable, and that it was appropriate for JDM Golf to hold her accountable for her lateness. [SOF ¶¶ 31-33]

Plaintiff's complaints about two stray incidents do not shield her from following JDM Golf's attendance requirements. *See, e.g., Cooper v. Health*, 438 F.Supp.3d 1002, 1016 (D. Ariz. 2020) (granting summary judgment for employer and recognizing that but-

14

for causation standard disallows employees from shielding themselves against adverse actions by pursuing a protected activity) (quoting *Shaninga*, 2016 U.S. Dist. LEXIS 49131, at *35); *Drottz,* 2013 U.S. Dist. LEXIS 167178, at *46 (recognizing that employee's preemptive engagement in a protected activity, whether frivolous or not, cannot transmute "into a shield against the imminent consequences of poor job performance").

JDM Golf did not retaliate against Plaintiff. This Court should enter summary judgment for JDM Golf on Plaintiff's retaliation claims under Title VII (Count I) and the ACRA (Count II).

## IV.   CONCLUSION

There is no material fact issue for trial on Plaintiff's discrimination or retaliation claims. Summary judgment is proper because the undisputed evidence is that the stray incidents that Plaintiff reported did not create a hostile work environment as a matter of law; JDM Golf was not liable for the alleged harassment; and JDM Golf did not retaliate against Plaintiff. Plaintiff was a part-time beverage server who, despite being coached and disciplined throughout her five months of employment for attendance and tardiness issues, never corrected the issues. JDM Golf lawfully ended Plaintiff's at-will employment. This Court should grant JDM Golf summary judgment on Plaintiff's Amended Complaint.

RESPECTFULLY SUBMITTED this 11th day of April, 2024.

BALLARD SPAHR LLP

By: /s/ Melissa R. Costello
Jay A. Zweig
Melissa R. Costello
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
*Attorneys for Defendant JDM Golf, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of April, 2024, I electronically transmitted the foregoing document to the U.S. District Court for the District of Arizona Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

I further certify that on this same date, the foregoing document was served via e-mail on the below counsel of record:

Nicholas J. Enoch
Morgan L. Bigelow
Taylor Secemski
LUBIN & ENOCH, P.C.
349 N. Fourth Avenue
Phoenix, AZ  85003-1505
nick@lubinandenoch.com
morgan@lubinandenoch.com
taylor@lubinandenoch.com
*Attorneys for Plaintiff*

By: */s/ Monica Baca*