**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Alyssa E. Nessel,

          Plaintiff,

v.

JDM Golf LLC, et al.,

          Defendants.

No.  CV-23-00095-PHX-DMF

**ORDER**

This matter is before the Court on Defendant JDM Golf LLC's Motion for Summary Judgment, which is fully briefed (Docs. 53, 54, 57, 58, 60).   On July 12, 2024, the Court held oral argument (Docs. 53, 59, 61).   After careful review and consideration of the parties' filings, the applicable law, and the matters discussed at oral argument, the Court will grant Defendant JDM Golf LLC's Motion for Summary Judgment (Doc. 53).

## I.    PROCEDURAL POSTURE

In January 2023, this matter was removed to this Court (Doc. 1).   All the named parties consented to proceed before a United States Magistrate Judge (Docs. 10, 12, 13). The unnamed parties and associated claims were dismissed without prejudice (Doc. 28), leaving Defendant JDM Golf LLC ("Defendant") as the only defendant.   Only Counts I and II remain from the removed First Amended Complaint (Docs. 1-3, 28).   In Count I of the First Amended Complaint, Plaintiff Alyssa E. Nessel ("Plaintiff") alleges discrimination on the basis of sex and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") (Doc. 1-3 at 4-13).   In Count II, Plaintiff alleges discrimination on the

basis of sex and retaliation under the Arizona Civil Rights Act ("ACRA"), A.R.S. § 41-1461 *et seq.* (*Id. at* 4-15).  Discovery was completed before Defendant's filing of the pending motion for summary judgment (Docs. 16, 47, 53).

## II.  SUMMARY JUDGMENT LEGAL STANDARD

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" as well as "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The evidence must be viewed in the light most favorable to the nonmoving party, and the Court must "draw all reasonable inference[s] in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "If ... [the] moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103.  "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "A summary judgment motion cannot be defeated by

relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*, 477 U.S. at 248-249. In other words, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Id.*

## III.    LEGAL FRAMEWORK

### A.    Title VII Hostile Work Environment

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63 (1986) (quoting 42 U.S.C. § 2000e-2(a)(1)). Yet, Title VII is not a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

A Title VII claim for discrimination based on sex is recognized for "the creation of a hostile work environment that 'is sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir. 2017) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "A plaintiff asserting a Title VII claim under a hostile work environment theory must show (1) the existence of a hostile work environment to which the plaintiff was subjected, and (2) that the employer is liable for the harassment that caused the hostile environment to exist." *Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006). To satisfy the first element, the plaintiff must show that "(1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) this conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Id.* (internal quotation marks and alteration omitted). Further, the "working environment must both subjectively and objectively be perceived as abusive, and the

objective analysis is done from the perspective of a reasonable woman." *Fuller*, 865 F.3d at 1161 (internal quotation marks omitted).

Regarding the third element, for the conduct to be pervasive, it is vital to consider how long the conduct lasted and how many times the conduct occurred. *Chesier v. On Q Financial Inc.*, 382 F.Supp.3d 918, 925-26 (D. Ariz. 2019) (citations omitted). Also regarding the third element, for a court to determine whether an environment is sufficiently hostile or abusive, the court must look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 648 (9th Cir. 2021) (citation omitted); *see also Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995) (noting that hostility is measured based on the totality of the circumstances). Further:

> [a] single incident of harassment "can support a claim of hostile work environment because the frequency of the discriminatory conduct is only one factor in the analysis," *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967 (9th Cir. 2002) (internal quotation marks omitted), but for a single incident to suffice, it "must be extremely severe*," Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000); *see also Little*, 301 F.3d at 967 (collecting cases).

*Fried*, 18 F.4th at 648. The "required severity for harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Id.* at 649 (internal citations and quotations omitted). Whether the conduct is sufficiently severe and pervasive to constitute a hostile work environment is a question of law. *Id.* at 648. Noteworthy is that the Ninth Circuit has held that "infrequent joking or teasing" may be "part of the ordinary tribulations of the workplace" and, thus, not actionable under Title VII. *Id.* at 649 (citing *EEOC v. Prospect Airport Servs., Inc.,* 621 F.3d 991, 998 (9th Cir. 2010) (sporadic gender-related jokes or occasional teasing do not establish a hostile work environment claim)).

"An employer is vicariously liable for a hostile work environment created by a supervisor." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 689 (9th Cir. 2017). For

- 4 -

purposes of vicarious liability under Title VII, an employee is a supervisor of a plaintiff if empowered by the employer to take tangible employment actions against the plaintiff. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013); *see also Kim v. Coach, Inc.*, 692 F. App'x 478, 479 (9th Cir. 2017) (affirming summary judgment for employer where assistant store managers accused of harassment could not affect the terms of the plaintiff's employment and thus were not "supervisors" within the meaning of *Vance*). "The ability to direct another employee's tasks is simply not sufficient" to give rise to supervisor status under Title VII. *Vance*, 570 U.S. at 439, 440. Instead, supervisors are "*a distinct class* of agent [empowered] to make economic decisions affecting other employees under his or her control....Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates." *Id.* at 440 (internal quotation marks and citation omitted) (emphasis in original).

If the perpetrator of a hostile work environment is not a supervisor, an employer is liable only "if the employer knew, or should have known, about the harassment and failed to take prompt and effective remedial action." *Reynaga*, 847 F.3d at 689 (internal quotation marks omitted). The proper focus for the hostile work environment claim is the employer's response to the coworker's or third party's conduct. *Fried*, 18 F.4th at 650. In determining whether an employer took immediate and corrective action, considerations include whether "the employer's response to known harassment has subjected the employee to further harassment" and whether "the employer either ratifies or acquiesces in the harassment." *Id.* at 651; *Brooks*, 229 F.3d at 924-25.

### B.     Title VII Retaliation

Title VII "prohibits retaliation against an employee 'because [she] has opposed any practice made an unlawful employment practice'" by Title VII. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1082 (9th Cir. 1996) (quoting 42 U.S.C. § 2000e–3(a)). A plaintiff makes a prima facie case of unlawful retaliation by producing evidence that she engaged in activity protected by Title VII, that the employer subjected her to a materially adverse action, and that there was a causal link between the protected activity and the adverse

action.  *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *see also Kelly v. Boeing Co.*, 848 F. App'x. 692, 694 (9th Cir. 2021) (affirming summary judgment for employer).

At the summary judgment stage, the burden shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802–805 (1973), applies to a retaliation claim.  *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 693 (9th Cir. 2017). In other words, if the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action which Plaintiff claims was retaliatory.  *Ray*, 217 F.3d at 1240; *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1022 (9th Cir. 2018).  "If such a reason is asserted, then the burden shifts back to the plaintiff to show that the asserted reason is merely a pretext for retaliation."  *Kama v. Mayorkas*, No. 23-55106, 2024 WL 3449142, at *4 (9th Cir. July 18, 2024).

The Ninth Circuit recently explained that:

> [t]he plaintiff's [prima facie] evidentiary burden is low. "Under the *McDonnell Douglas* framework, the requisite degree of proof necessary to establish a prima facie case ... on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Opara v. Yellen*, 57 F.4th 709, 722 (9th Cir. 2023) (cleaned up) (quoting *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002)).  This minimal burden is doubtless justified by the fact that those discriminating against a person because of that person's protected activity may not, in their statements and documents, create direct evidence of discrimination, though the claim against them is equally justified as in a case where the discrimination has been admitted.

*Kama*, 2024 WL 3449142, at *4.  Regarding the assessment of the validity of a defendant employer's stated reason for the adverse employment action:

> the key is not whether the reason is "objectively false" or "baseless" but whether the employer "honestly believed its reasons for its actions." *Villiarimo*, 281 F.3d at 1063 (citation omitted) (holding it was irrelevant whether an employee who was fired for lying during an investigation had actually lied).

*Kama*, 2024 WL 3449142, at *4.  Once the defendant presents evidence showing that the

adverse employment action was taken for a legitimate nondiscriminatory reason, the plaintiff bears the "burden of demonstrating that the reason was merely a pretext for a discriminatory motive." *Ray*, 217 F.3d at 1240; *Reynaga*, 847 F.3d at 693. A plaintiff can establish pretext directly, by showing that unlawful discrimination more likely than not motivated the employer, indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or via a combination of these two kinds of evidence. *Kama*, 2024 WL 3449142, at *4 (internal quotation marks and citation omitted).

As further explained by the Ninth Circuit:

> [a]t the pretext stage, the plaintiff's burden remains low, and "very little[ ] evidence is necessary to raise a genuine issue of fact regarding an employer's motive." *Opara*, 57 F.4th at 723-24 (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004)). Nevertheless, a plaintiff must present some evidence that goes to the defendant's motivation—either by directly showing that it was discriminatory or by contesting the defendant's claimed motivation. *Villiarimo,* 281 F.3d at 1063; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may [be enough]."). If there is "abundant and uncontroverted independent evidence" supporting the defendant's stated motive, then "plaintiff's 'creat[ion of] only a weak issue of fact as to whether the employer's reason was untrue' will not suffice." *Opara*, 57 F.4th at 724 (quoting *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097).

*Kama*, 2024 WL 3449142, at *4.

A Title VII plaintiff relying on comparator evidence to show pretext for an adverse employment action must identify employees outside the plaintiff's protected class who were similarly situated to the plaintiff but who were not subject to the adverse action. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) as amended (Jan. 2, 2004). "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Id*. In *Vasquez,* the court found that because one employee "did not engage in problematic conduct of comparable seriousness to that of [the plaintiff,]" the employee was not similarly situated to the plaintiff. *Id.*

Regarding the timing of adverse employment action to the protected activity, the Ninth Circuit explicated:

> Temporal proximity can support both a prima facie case of retaliation and a showing of pretext. *Miller*, 797 F.2d at 731-32. However, the inquiry is fact-specific and depends on both the degree of proximity and what, if any, other evidence supports an inference of pretext. *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003). Even cases involving very close temporal proximity have generally featured independent evidence of discrimination or retaliation. *E.g., Strother v. Southern Cal. Permanente Med. Grp.*, 79 F.3d 859, 870-71 (9th Cir. 1996) (proximity of one day along with threats by employer and corroborating letters established pretext); *Dawson*, 630 F.3d at 937 (proximity of two days combined with employer's explicit reference to protected activity during termination established pretext); *Bell v. Clackamas Cnty*, 341 F.3d 858, 866 (9th Cir. 2003) (proximity of four days combined with evidence of supervisors' displeasure with protected activity supported retaliation claim); *Miller*, 797 F.2d at 732-33 (proximity of less than two months combined with fact that employer's lay-offs affected only employees who engaged in protected activity established pretext).

> Evidence of temporal proximity is less persuasive if it also supports a defendant's independent reason for an adverse action. For example, in *Curley v. City of North Las Vegas*, the plaintiff-employee argued that "the fact that the City [had] fired him within two months of his protected activity is itself evidence of pretext." 772 F.3d 629, 634 (9th Cir. 2014). We acknowledged that temporal proximity may be enough in some cases but concluded that it was not enough in *Curley*. *Id.* We pointed to revelations about the plaintiff's misconduct that arose during the same two-month period and held that "the new information revealed by the City's investigation defeats any causal inference that might otherwise follow from the temporal proximity between [the plaintiff's] protected activity and his termination." *Id.* We stressed that "even if Curley has established a prima facie case," "[t]he timing here ... does nothing to refute the City's legitimate explanations for the adverse employment action." *Id.* *Curley* illustrates that when temporal proximity cuts both ways—i.e., an adverse action follows on the heels of both a protected activity and an independent reason for adverse action—it might not be enough standing alone to establish pretext.

*Kama*, 2024 WL 3449142, at *4.

### C.    ACRA

As counsel for the parties each affirmed at oral argument, ACRA claims are subject

- 8 -

to the same analysis as Title VII claims.  *See Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004) (quoting *Higdon v. Evergreen Int'l Airlines, Inc.*, 138 Ariz. 163, 673 (1983) ("[T]he Arizona Civil Rights Act is generally identical to Title VII, and therefore federal Title VII case law is persuasive in the interpretation of the Arizona Civil Rights Act") (internal quotations and punctuation omitted)); *Francini v. Phoenix Newspapers, Inc.*, 188 Ariz. 576, 582, 937 P.2d 1382, 1388 (Ct. App. Div. 1 1996) (because ACRA is modeled after federal employment discrimination laws, federal case law is persuasive in applying ACRA); *see also Cisneros v. Sears, Roebuck & Co.*, 135 Ariz. 301, 302, 660 P.2d 1228, 1229 (Ct. App. Div. 2 1982).

## IV.    ANALYSIS

### A.    Discrimination on the Basis of Sex/Hostile Work Environment

The Court construes the record in the light most favorable to Plaintiff, who began working for Defendant in May 2019.  The record does not present a triable question of fact as to whether the two unrelated incidents of alleged sexual harassment during Plaintiff's under six months of being employed by Defendant – (1) groping by a non-employee golfer which included an attempt to take off Plaintiff's skirt resulting in exposure of one side of Plaintiff's buttocks, and (2) sexually suggestive texts from a coworker – separately, together, and considered with admissible evidence regarding coworker comments about the groping constitute a sex discrimination hostile work environment.[1]  The undisputed material facts establish that neither the September 13, 2019, groping by a non-employee golfer nor the sexually suggestive texts from a coworker on September 20-21, 2019, created an abusive working environment or altered the conditions of Plaintiff's employment.  Also, the comments by coworkers about the non-employee golfer groping as described by Plaintiff, coupled with the groping and texting incidents, are insufficient to establish a discriminatory hostile work environment.  Additionally, consideration of Plaintiff's

---

[1] Plaintiff testified at her deposition that she had not been sexually harassed while working for Defendant before September 13, 2019 (Doc. 58-1 at 40, lines 7-10 ("Q. Before the incident that we're talking about on September 13, 2019 with the golfer, had you ever been sexually harassed while working at the Wigwam? A. No.").

complaints about Defendant's response timing, wording, and actions to Plaintiff's reporting of the groping, texting, and coworker comments do not change the Court's conclusion that under the applicable law, Plaintiff has not presented sufficient evidence to present a triable issue of fact regarding Plaintiff's hostile work environment discrimination claims under Title VII or ACRA.[2]

Further, the undisputed material facts establish that neither the groper nor the texter was Plaintiff's supervisor, and Plaintiff has not presented sufficient evidence showing that Defendant's responses to Plaintiff's complaints were untimely or otherwise inadequate.[3] Importantly, Defendant's actions in response to Plaintiff's report of the groping by the non-employee golfer included promptly contacting security and law enforcement; the golfer did not again bother Plaintiff and no similar instances occurred afterwards. Defendant's prompt actions in response to Plaintiff's report of the sexually suggestive text messages from the other employee included suspension of the other employee for a week without pay; the employee did not bother Plaintiff again and no similar instances occurred afterwards. The record in this matter also reflects that Defendant adequately addressed the coworker gossip and comments about the groping incident when this issue was raised by Plaintiff.

As pointed out by the Ninth Circuit, events in the workplace (such as the non-employee golfer's groping of Plaintiff as described by Plaintiff) can be reprehensible but not actionable under employment civil rights laws. *Brooks*, 229 F.3d at 927. On the record before the Court, there is no genuine dispute of material fact as to Plaintiff's sex discrimination hostile work environment claims in remaining Counts I and II, and summary judgment for Defendant is appropriate regarding such claims.

---

[2] Regarding Plaintiff's termination, *see* section IV(B) below.

[3] Plaintiff testified at her deposition that a non-employee golfer, whom she believed was a friend of an employee coworker, got in Plaintiff's space and made Plaintiff uncomfortable in June or July 2019, but that Plaintiff did not report the event (*Id.* at 40-43; *Id.* at 41, lines 23-24 ("Q: Did you report that to anyone? A: No, I did not.")). Plaintiff testified that she may have "casually, like, mentioned" something about it to a supervisor at another time (*Id.* at 40-43). Plaintiff's testimony reflects that Plaintiff did not consider this event to be sexual harassment. (*Id.* at 40, lines 7-10).

**B.    Retaliation**

While the timing of Plaintiff's termination to her reports of sexual harassment may be legally sufficient to establish a prima facie case of retaliation, the timing of Plaintiff's termination and other evidence in the record are not legally sufficient to avoid summary judgment for Defendant.  Viewed in the light most favorable to Plaintiff, Plaintiff has not identified (and the record does not present) adequate evidence that Defendant's legitimate nondiscriminatory explanation for termination of Plaintiff based on her repeated attendance violations is unworthy of credence.  In sum, Plaintiff has not established that material issues of disputed fact exist regarding pretext, and Plaintiff has not met her low evidentiary burden regarding pretext at this stage of the case.

The undisputed material facts are that Defendant enforced its legitimate attendance policies not just as to Plaintiff, but also as to its other employees.[4]  The undisputed material facts are that Plaintiff committed numerous attendance violations that Defendant addressed throughout Plaintiff's employment with progressive counseling and disciplinary steps resulting in eventual termination.  The undisputed material facts include that Defendant addressed the attendance violations with Plaintiff before and after the protected activities of her reports of the groping and of the sexually suggestive texts by a coworker.  The undisputed material facts demonstrate that Plaintiff's multiple attendance violations were throughout the course of her employment, that Defendant counseled Plaintiff during the course of her employment about the need to follow Defendant's attendance policies including arriving timely, that Plaintiff's attendance violations were more numerous than other employees who were not terminated for attendance violations, and that Plaintiff knew she could be terminated for attendance violations if she did not comply with Defendant's attendance policies.  Plaintiff committed attendance violations after the protected conduct of her sexual harassment reports, and Plaintiff's last attendance violation before termination was just days before her termination.  Plaintiff's protected activities of

_____

[4] The Court uses attendance policies to refer to timeliness of arrival as well as showing up for scheduled shifts; likewise, attendance violations encompass tardiness as well as no shows and no show/no calls for scheduled shifts.

reporting sexual harassment do not legally shield Plaintiff from Defendant's legitimate nondiscriminatory attendance requirements, which were part of Defendant's employment policies and were enforced as to employees besides Plaintiff. On the record before the Court, summary judgment for Defendant regarding Plaintiff's retaliation claims is appropriate.

## V.    CONCLUSION

The undisputed material facts in the record before the Court are legally insufficient to demonstrate hostile work environment sex discrimination or retaliation discrimination claims on which a jury could return a verdict for Plaintiff. Defendant's motion for summary judgment on remaining Counts I and II of Plaintiff's First Amended Complaint will be granted.

Accordingly,

**IT IS ORDERED** granting Defendant JDM Golf LLC's Motion for Summary Judgment (Doc. 53).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Defendant JDM Golf LLC and terminate this matter.

Dated this 22nd day of July, 2024.

_____
Honorable Deborah M. Fine
United States Magistrate Judge